IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

JEFFREY J. MEDIRAN,

               Plaintiff,

        v.

THE INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE WORKERS; UNITED AIRLINES,

               Defendants.

NO. C 09-538 TEH

**ORDER GRANTING DEFENDANTS' MOTIONS FOR JUDGMENT ON THE PLEADINGS**

        This matter came before the Court on June 15, 2009 on Defendants' Motions for Judgment on the Pleadings. Having carefully considered the parties' written and oral arguments, Defendants' Motions are GRANTED for the reasons set forth below.

**FACTUAL AND PROCEDURAL BACKGROUND**

        As on a motion for judgment on the pleadings, the Court must assume all of the complaint's factual allegations to be true, and must construe all reasonable inferences in favor of the nonmoving party, this account of the facts is based on that provided by the Plaintiff in his complaint.

        Mediran was an employee of United Airlines ("United") at the San Francisco International Airport, where he worked as a baggage handler for a number of years, including 2004, when Mediran was dismissed. Mediran was a member of the International Association of Machinists and Aerospace Workers, which was his union ("Union"). On April 9, 2004, Mediran was notified that he was terminated from his position with United. Mediran acknowledges that this termination was predicated on notification from the transportation

administration regarding a prior legal violation committed by Mediran. Although the complaint is not very clear on this issue, it acknowledges that Plaintiff had committed some prior legal violation for which he could seek expungement of his legal record until December of 2004.[1]

Plaintiff asserts that he was subject to retention and rehire, a fact of which he was advised by United. Further, he claims that another employee at the management level, Harold Jones, had a similar violation but was permitted to return to employment, whereas Plaintiff was not rehired. Plaintiff thus asserts, but does not bring a cause of action making a legal claim, that he was deprived of fundamental due process and equal protection of laws by unfair discrimination and discharge.

Plaintiff asserts that he contacted his Union representative and filed the required paperwork for the institution of Union representation by Defendant Union and for the initiation of grievance procedures in order to mediate the problems and retain his employment. Plaintiff alleges that the Union advised him that he had a right to representation at all times, that the Union would assist him, and that the Union would take all steps to proceed with the grievance. He further alleges that "United failed to honor [his] employment status by continuing employment at the first level of a grievance proceeding." Compl. at ¶ 7. Plaintiff claims he took all steps to institute the second level of the grievance procedure, and that he was advised that all steps would be followed and prosecuted on his behalf. Plaintiff asserts that United was bound to honor and participate in the grievance procedure, and that United failed to perfect or participate in the procedure, instead ignoring his claim and the procedure.

Plaintiff additionally claims a series of delays occurred despite his efforts to follow up with the Union. He alleges that he was informed in August 2005 that delays had occurred with United but that the matter was being reviewed further. He asserts that the Union

---

[1] Defendants assert that Mediran's prior offense was for a firearm violation. They claim that after 9/11, the TSA tightened restrictions on the presence of persons with criminal records in secure areas of airports. However, because the facts of his prior offense are disputed, and on the current motion, the Court must take all facts as reasonably asserted by Plaintiff, the Court will disregard these assertions in reaching its decision.

2

advised him in writing in September 2005 that his unique complaint required further review. He claims that his follow-ups were ignored, and that he was advised in January 2008 that his case was exceeding the grievance procedure because of similar matters in customs, the postal service, and other agencies, such that Plaintiff would be advised soon thereafter. He claims that the Union continued to delay, obstruct, and mislead Plaintiff as to the status of his grievance, but was advised that the matter was being processed. In March 2008, Plaintiff was advised that his paperwork had been misplaced even though he had been assured that his paperwork had been filed and that matters were progressing. In April 2008, the Union informed Plaintiff that his termination had been for cause, and that processing would need to continue through human resources to assure rehiring. Plaintiff asserts that he was discriminated against because he was a Union employee, unlike the managerial employee who continued employment despite similar disqualifying conduct. In late October 2008, the Union informed Plaintiff that his file had been sent off-site but was being recalled. Shortly thereafter, the Union admitted to Plaintiff that the grievance had not been processed or prosecuted, and conceded that they had failed to provide representation. On November 9, 2008, the Union admitted to Plaintiff that his form had been lost and that nothing could be pursued on his behalf.

    Plaintiff filed suit in San Francisco County Superior Court against the Union and United on January 2, 2009, bringing four causes of action: 1) Breach of Duty of Fair Representation, against the Union; 2) Breach of Contract, against United; 3) Injunctive Relief, against the Union and United; and 4) Fraud, against the Union. United removed the action to federal court on February 5, 2009. United filed its motion for judgment on the pleadings on April 27, 2009, and the Union filed its motion for judgment on the pleadings on April 10, 2009. These motions are presently before the Court.

**LEGAL STANDARD**

    Granting a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is proper "when the moving party clearly establishes on the face of the

3

pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." *Hal Roach Studios, Inc. v. Richard Feiner & Co.,* 896 F.2d 1542, 1550 (9th Cir. 1990). In analyzing a Rule 12(c) motion, the court must assume the pleading's factual allegations to be true and must construe all reasonable inferences in favor of the nonmoving party. *Gen. Conference Corp. of Seventh-Day Adventists v. Seventh-Day Adventist Congregational Church*, 887 F.2d 228, 230 (9th Cir. 1989).

**ANALYSIS**

Both Defendants bring motions for judgment on the pleadings. The Union asserts that 1) Plaintiff's facts do not rise to the level of breach of the duty of fair representation, presenting, at most, a claim for negligence; 2) the action is time-barred by the applicable six-month statute of limitations; 3) Plaintiff's demand for injunctive relief is preempted by federal labor law; 4) Plaintiff's tort claim is preempted by federal labor law; and 5) Plaintiff's fraud claim is not pleaded with adequate particularity under Rule 9(b). United claims that 1) the Railway Labor Act ("RLA") preempts Plaintiff's claims; 2) Plaintiff's claims are time-barred because of the time limits set forth in the collective bargaining agreement and statute of limitations of the RLA; 3) Plaintiff failed to exhaust administrative remedies provided in the collective bargaining agreement; and 4) Plaintiff fails to state facts upon which his claims can be sustained. Because this motion can be resolved based on arguments made in common by both Defendants, the Court's analysis will be confined to the preemption and statute of limitations claims.

**The Railway Labor Act Preempts Plaintiff's Second, Third, and Fourth Claims**

"The RLA . . . provides a comprehensive framework for the resolution of labor disputes in the railroad industry. . . . [It] establishes elaborate administrative procedures for the resolution of both major and minor labor disputes." *Atchison, Topeka and Santa Fe Ry. Co. v. Buell*, 480 U.S. 557, 562 (1987). Congress has extended the RLA to cover the airline industry as well. 45 U.S.C. § 181. The Supreme Court has interpreted the RLA to provide an exclusive remedy in the case of minor disputes regarding CBAs. *Andrews v. Louisville &*

4

*N. R. Co.*, 406 U.S. 320, 322-23 (1972).  Minor disputes are those that arise from "grievances or out of the interpretation or application of agreements covering rates of pay, rules, or working conditions," 45 U.S.C. § 151a, or that "involve controversies over the meaning of an existing collective bargaining agreement in a particular fact situation." *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 253 (1994) (internal citations and quotation marks omitted). "The RLA establishes a mandatory arbitral mechanism to handle disputes 'growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions.'" *Air Transport Ass'n of Am. v. City and County of San Francisco*, 266 F.3d 1064, 1075-76 (9th Cir. 2001) (citing 45 U.S.C. § 153(i)).  For preemption purposes, the RLA is treated as analogous to the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185 *et seq.  See Hawaiian Airlines*, 512 U.S. at 263.[2]

       Although the RLA lacks express preemption language, the courts have interpreted it to preempt state law and lawsuits in certain circumstances. *Air Transport Ass'n* at 1076. According to the Ninth Circuit, "state law causes of action that depend upon the interpretation of CBAs are preempted because the interpretation or application of existing labor agreements are the exclusive jurisdiction of the arbitrational bodies created by the RLA." *Id.*  (citing *Hawaiian Airlines*, 512 U.S. at 252-53; *Espinal v. Nw. Airlines*, 90 F.3d 1452 (9th Cir. 1996).  However, "[c]laims or causes of action involving rights and obligations that are independent of the CBA are not preempted." *Id.* (citing *Hawaiian Airlines*, 512 U.S. at 256 ("holding employee's whistleblower claim was not preempted by the RLA"); *Espinal*, 90 F.3d at 1459 ("holding that employee's state law discrimination claims were not preempted by the RLA, but breach of contract claims were")).

       A defendant may assert the preemption doctrine of the Railway Labor Act as a basis of dismissal or judgment on the pleadings in a case that requires interpretation of a CBA. *Rachford v. Air Line Pilots Ass'n, Intern.*, 2008 WL 2607949, at *2 (9th Cir. 2008) (upholding district court dismissal of case based upon its finding of preemption where

---

[2]Preemption cases under the LMRA are generally referred to as Section 301 cases, pursuant to the section of the LMRA,  and Section 301 cases are generally applicable to interpretation of the RLA.

5

consideration of state law contract claims required determination of whether CBA had been breached or disrupted, thus necessitating interpretation of the CBA); *Madison v. Motion Picture Set Painters & Sign Writers Local 729*, 132 F. Supp. 2d 1244, 1259 (C.D. Cal. 2000) (considering preemption on a motion for judgment on the pleadings).

Three of Plaintiff's causes of action clearly require interpretation of the CBA he entered through his Union, and as such are preempted. Plaintiff's Breach of Contract claim against United, his second cause of action, asserts as its fundamental basis that United breached its duties and responsibilities pursuant to the CBA contract between the Union and United, by terminating Plaintiff's employment and by failing to proceed with or participate in the grievance procedures under the CBA. To determine whether this contract was breached under state law, the Court would need to interpret the CBA, which federal law preempts the Court from doing in interpreting state law. "Ninth Circuit precedent is clear that where a relationship is otherwise governed by a collective bargaining agreement, state law theories of breach of contract and implied covenant of good faith and fair dealing are preempted, and subject to recharacterization as Section 301 claim[s] for breach of contract." *Busey v. P.W. Supermarkets, Inc.*, 368 F. Supp. 2d 1045, 1054 (N.D. Cal. 2005). As a result, the state law contract claim is preeempted by the RLA.

Plaintiff's third cause of action for injunctive relief[3] also resorts to interpretation of the CBA to determine the benefits and pay that Plaintiff would be entitled to pursuant to the CBA. The CBA itself makes clear, however, that all remedies arising from the CBA are to be heard by the System Board, in compliance with the RLA.[4] Accordingly, this Court lacks jurisdiction over reinstatement and pay, as the CBA delegates such adjudicative responsibility to the System Board.

Plaintiff's fourth cause of action for fraud asserts that the Union made misrepresentations of material fact to Mediran, including assertions that the "grievance

---

[3] Although the complaint asserts the claim for injunctive relief against both the Union and United, Mediran concedes in his opposition papers that he is only bringing this claim against United. Pl.'s Opp. to Def. Union's Motion, at 18.

[4] The Court has taken judicial notice of the CBA. *Busey*, 368 F. Supp. 2d at 1049.

6

1 process was complicated, unique, of first impression, and would take a significant period of
2 time to complete." Compl. at ¶ 53(c). This claim is likewise preempted. In order to
3 determine whether fraud occurred under California law, the Court would need to determine
4 what responsibilities the Union had under the grievance procedure outlined in the CBA and
5 whether the Union misrepresented aspects of the grievance procedure of the CBA. Both of
6 these tasks would require the Court to interpret provisions of the CBA itself, which preempts
7 the state law claim. *Adkins v. Mireles*, 526 F.3d 531, 541 (9th Cir. 2008) (holding that while
8 "[n]ot every dispute concerning a provision of a collective bargaining agreement is
9 preempted by LMRA § 301," the instant fraud claim required interpretation of the CBA itself
10 to determine whether the union had falsely represented the CBA). Accordingly, the fraud
11 claim here is also preempted by the RLA.

**Plaintiff's Claims Are Time-Barred**

13 Even if the Court were to recharacterize the Plaintiff's state court claims under the
14 RLA, *Busey*, 368 F. Supp. 2d at 1054, all of his claims are barred by the statute of
15 limitations. The Ninth Circuit has adopted a six-month statute of limitations for hybrid duty
16 of fair representation/breach of contract suits brought under the RLA. *Kelly v. Burlington N.*
17 *R.R. Co.*, 896 F.2d 1194, 1197 (9th Cir. 1990). The statute of limitations in an LMRA, or
18 RLA, suit begins to run "when the plaintiff knew, or should have known, of the defendant's
19 wrongdoing and can successfully maintain a suit in the district court." *Allen v. United Food*
20 *& Commercial Workers Intern. Union*, 43 F.3d 424, 427 (9th Cir. 1994).

21 Here there is no dispute that the six-month statute of limitations is the applicable rule.
22 Rather, the Defendants assert that Plaintiff's cause of action accrued well before July 2,
23 2009, the date six months prior to the filing of his suit on January 2, 2009. Plaintiff, in
24 contrast, argues that since he was not aware of the Union's failure to pursue the grievance
25 process until November of 2008, his belief that the grievance process was ongoing tolled the
26 statute's application until that time. Pl.'s Opp. to Def. United's Motion, at 10. Plaintiff
27 further contends that because he was "misled, lied to, given false information, [and] advised
28 that the case was going forward" until November 2008, he could not have been on notice of

7

1  wrongdoing until that time; he claims he had no reason to believe that there was a problem
2  with his claim until he was advised otherwise in 2008. Pl.'s Opp. to Def. Union's Motion, at
3  11.
4     Plaintiff's representations in his opposition papers belie the facts as presented in the
5  complaint and strain credulity; as such, even on a motion for judgment on the pleadings, the
6  Court need not accept such assertions as true when they require unreasonable inferences to
7  be made. Plaintiff's dismissal occurred on April 9, 2004. Although the complaint does not
8  assert dates on which Plaintiff took steps in the grievance process, his complaint clearly
9  asserts that over the period from September 2005 to January 2008, his "follow-ups were
10 ignored by defendants over time." Compl. at ¶ 12. Contrary to his opposition papers,
11 Mediran's own pleadings demonstrate that he had ample reason to believe there was a
12 problem with his grievance. That Mediran received reassurance in January 2008 that he was
13 not being ignored does nothing to stop the application of the statute of limitations. During a
14 period of twenty-seven months in which Mediran himself alleges that he followed up and
15 was ignored, Mediran should have known that there was a problem with the processing of his
16 grievance. Given that his claims turn directly on the actions of Defendants in the grievance
17 process, this lengthy period of time was more than adequate for Mediran to have known of
18 the wrongdoing he alleges that Defendants committed. The facts as alleged in the complaint
19 only serve to highlight Mediran's inactivity in pursuit of remedy even while he was on notice
20 of what he claims was a period of being ignored by Defendants; this demonstrates that he
21 knew there was a problem with the handling of his grievance did not file suit. In any event,
22 the statute had certainly run on Mediran's claims by January 2009, more than three years
23 after the beginning of the period in which Mediran alleges that Defendants failed to
24 prosecute or participate in the grievance process. Mediran's claims are thus time-barred.
25 //
26 //
27 //
28 //

8

**CONCLUSION**

For the reasons discussed above, the Court GRANTS Defendants' motions for judgment on the pleadings. As this order terminates the case, no further case management conference is necessary. The clerk shall enter judgment for the Defendants and close the file.

**IT IS SO ORDERED.**

Dated: June 16, 2009

THELTON E. HENDERSON, JUDGE
UNITED STATES DISTRICT COURT