United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

JEFFREY J. MEDIRAN,

                    Plaintiff,

          v.

THE INTERNATIONAL
ASSOCIATION OF MACHINISTS
AND AEROSPACE WORKERS,

                    Defendant.

NO. C09-0538 TEH

ORDER RE: MOTION FOR
JUDGMENT ON THE
PLEADINGS

          This matter came before the Court on July 11, 2011, on a motion for judgment on the
pleadings filed by Defendant International Association of Machinists and Aerospace
Workers ("IAM" or "Defendant"). For the reasons set forth below, Defendant's motion is
DENIED.

**BACKGROUND**

          Mediran was a baggage handler for United Airlines ("United") at the San Francisco
International Airport, where he worked until he was dismissed on April 9, 2004.[1] United
terminated Mediran upon being notified of his prior "violation of law, subsequently
expunged." Compl. ¶ 5. IAM was Mediran's union.

          Mediran  asserts that he should have been retained and rehired. Another United
employee, Harold Jones, had a similar violation but was allowed to return to his job. Mediran
alleges that United discriminated against him, and he contacted his IAM representative to
represent him in the grievance process. Mediran filed the required paperwork and IAM

          [1] Because the Court must accept the facts alleged in the pleadings as true, the facts
recounted here are those contained in Mediran's Complaint. *See Gen. Conference Corp. of
Seventh-Day Adventists v. Seventh-Day Adventist Congregational Church*, 887 F.2d 228, 230
(9th Cir. 1989).

**United States District Court**
For the Northern District of California

advised Mediran that he had a right to representation at all times, that IAM would assist him, and that IAM would take all steps to proceed with the grievance. When United did not rehire Mediran, Mediran worked with IAM to initiate a second-level grievance. IAM once again assured Mediran that it would take all necessary steps to protect Mediran through the grievance and mediation process.

IAM "initially failed to follow up on the status of the grievance procedure . . . ." Compl. ¶ 10. After Mediran made several written inquiries, IAM told Mediran in August 2005 that United had caused some delays but that IAM would follow up and further advise Mediran as to the status of his grievance. Mediran contacted IAM again, and in September 2005, IAM advised Mediran in writing that because of the unique nature of United's action against Mediran, Mediran's grievance was still under review.

Mediran alleges that his grievance was not under review. Instead, IAM "falsified, obstructed, impeded, and consciously and willfully advised [Mediran] that his case was delayed internally, and [IAM was] doing all things necessary to protect and perfect [Mediran's] rights as a member of the Union in the aforesaid grievance, and that [IAM] would undertake all acts and things to have him reinstated with back pay, and other benefits." Compl. at ¶ 11. IAM ignored Mediran's attempts to follow up on his grievance.

In January 2008, IAM sent Mediran a letter saying that he was not being ignored, and that the case was "going beyond the grievance processes" because of similar cases involving customs, the postal service, and other agencies. Compl. at ¶ 12. The letter said that Mediran would be advised of the status of his grievance in several days. Mediran responded with a letter explaining that "he had been cleared by [the Transportation Safety Administration] to return to work, he had not been banned, [and] there was no longer a government issue . . . ." *Id.* at ¶ 13. IAM told Mediran that the matter would be resolved within several weeks of January 22, 2008. Yet "[IAM] continued to delay, obstruct and mislead Plaintiff as to the status of his grievance and the Union administrative processes in place, and [Mediran] was further advised by [IAM] in writing that the matter was being processed, and would soon be resolved." *Id.* at ¶ 14.

United States District Court

For the Northern District of California

Mediran continued to inquire about his grievance, both orally and in writing. IAM told Mediran that meetings were being set up with United's human resources department. Mediran followed up with IAM on March 10, 2008, and IAM advised him that his grievance paperwork had been misplaced. Mediran wrote back explaining that "he had been assured that the grievance paperwork had been filed [and] that matters were progressing." Compl. ¶ 15. On March 31, 2008, IAM assured Mediran that his grievance had been filed.

In April 2008, IAM told Mediran that the termination of his employment had been for cause, and that processing through United's human resources department would be necessary to assure re-employment. Mediran followed up with IAM, and union officials explained to Mediran that his "cause was being processed." Compl. at ¶ 17. In October 2008, IAM wrote a letter to Mediran stating that his file had been sent to off-site storage and was being recalled for continued processing. Shortly thereafter, IAM admitted to Mediran that the grievance had not been processed or prosecuted, and conceded that IAM had failed to provide representation. IAM also told Mediran that "he may have no rights or remedies for restoration of his position . . . via the grievance procedure." *Id.* at ¶ 19. Mediran alleges that IAM "falsified the grievance processing in Plaintiff's case . . . ." *Id.* at ¶ 20. On November 9, 2008, IAM admitted to Mediran that the grievance form he had signed had been lost and that nothing more could be done on his behalf.

Mediran filed suit in San Francisco County Superior Court against IAM and United on January 2, 2009. He brought four causes of action: 1) breach of the duty of fair representation against IAM; 2) breach of contract against United; 3) injunctive relief against the both defendants; and 4) fraud against IAM. United removed the action to federal court on February 5, 2009. This Court granted two motions for judgement on the pleadings – one filed by IAM and the other by United – on June 16, 2009. It did so on two bases. First, it found that three of Mediran's four causes of action were preempted by the Railway Labor Act ("RLA"), 45 U.S.C. § 151 *et seq.*, which provides the exclusive remedy for minor disputes involving collective bargaining agreements in the airline industry. Second, the Court held that all four claims were barred because the six-month statute of limitations had run before

Mediran filed his Complaint. Mediran appealed the Court's ruling with respect to the statute

of limitations issue, and the Ninth Circuit reversed. This ruling revived Mediran's first claim

for breach of the duty of fair representation against IAM. IAM filed a new motion for

judgment on the pleadings on May 16, 2011, and this motion is now before the Court.

**LEGAL STANDARD**

Granting a motion for judgment on the pleadings under Federal Rule of Civil

Procedure 12(c) is proper when "the moving party clearly establishes on the face of the

pleadings that no material issue of fact remains to be resolved and that it is entitled to

judgment as a matter of law." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d

1542, 1550 (9th Cir. 1989). In analyzing a Rule 12(c) motion, the court must assume the

pleading's factual allegations to be true and must construe all reasonable inferences in favor

of the nonmoving party. *Seventh-Day Adventists*, 887 F.2d at 230.

**DISCUSSION**

IAM offers three arguments in support of its motion for judgment on the pleadings:

(1) Mediran's claim is barred by res judicata and collateral estoppel; (2) Mediran's

allegations are insufficient to support a duty of fair representation claim; and (3) Mediran

does not plead a causal link between the IAM's alleged actions and the damages he seeks.

The Court will address these arguments in turn.

**I. Breach of Contract**

Mediran brings his remaining claim against IAM under § 301 of the Labor

Management Relations Act ("LMRA"), 29 U.S.C. § 185 *et seq*. When a plaintiff uses this

statute to pursue a duty of fair representation claim against a union, the claim is known as a

hybrid § 301/fair representation suit. Mediran does not explicitly refer to his claim as a

**United States District Court**
For the Northern District of California

4

United States District Court
For the Northern District of California

hybrid § 301/fair representation suit. However, Mediran seems to concede that his claim is a hybrid claim.[2]  He argues that he has adequately pleaded breach of contract.

Hybrid § 301/fair representation claims typically arise where a union's handling of a grievance is alleged to be deficient. *Galindo v. Stoody Co.*, 793 F.2d 1502, 1509 (9th Cir. 1986). In these cases, the employee brings a claim against his employer for breaching the collective bargaining agreement, and against his union for pursuing his grievance against the employer "in such a discriminatory, dishonest, arbitrary, or perfunctory fashion as to breach its duty of fair representation." *DelCostello v. Int'l Bhd. Of Teamsters*, 462 U.S. 151, 164, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983). A hybrid § 301/fair representation suit, "as a formal matter, comprises two causes of action." *DelCostello*, 462 U.S. at 164 (1983).

> The suit against the employer rests on § 301, since the employee is alleging a breach of the collective bargaining agreement. The suit against the union is one for breach of the union's duty of fair representation, which is implied under the scheme of the National Labor Relations Act. Yet the two claims are inextricably interdependent. To prevail against either the company or the union, . . . [employee-plaintiffs] must not only show that their discharge was contrary to the contract but must also carry the burden of demonstrating a breach of duty by the union.

*Id.* at 164-65 (internal quotations, footnote, and citations omitted; alteration in original). In other words, "[w]hether the defendant is the union or the employer, the required proof is the same: The plaintiff must show that there has been both a breach of the duty of fair representation and a breach of the [collective bargaining agreement]." *Bleisner v. Commc'n Workers of Am.*, 464 F.3d 910, 913-14 (9th Cir. 2006).

IAM argues that Mediran's hybrid claim is barred by res judicata and collateral estoppel because Mediran abandoned his state claim for breach of contract against United, a claim that was dismissed by this Court. As the Ninth Circuit observed, "Mediran expressly conceded that the causes of action other than the count against IAM were properly dismissed . . . ." *Mediran v. Int'l Ass'n of Machinists and Aeropsace Workers*, No. 09-16504, 2011 WL 1114302, at *1 n.5 (9th Cir. 2011). Mediran petitioned for a panel rehearing on this issue,

---

[2] In addition, the Ninth Circuit, in its memorandum, referred to Mediran's claim as a hybrid claim.

and was denied. IAM does not directly apply the doctrines of res judicata and collateral estoppel to this case. Instead, it offers out-of-circuit authorities that have relied upon these doctrines to bar hybrid claims. It cites *Banks v. International IAM Electronic, Electrical, Technical, Salaried and Machine Workers*, where the Eighth Circuit observed that "[c]ollateral estoppel bars the relitigation of factual or legal issues that were determined in a prior . . . court action . . . ." 390 F.3d 1049, 1054 (8th Cir. 2004) (internal quotations omitted). That case involved consecutive lawsuits filed in the Eastern District of Arkansas. IAM also cites *DiPinto v. Sperling*, a First Circuit case in which the plaintiffs' unsuccessful suit against their employer in state court barred their subsequent hybrid claim against the employer and plaintiffs' union. 9 F.3d 2 (1st Cir. 1993).

The doctrines of res judicata and collateral estoppel dictate "that a right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction cannot be disputed *in a subsequent suit* between the same parties or their privies." James Moore, *Moore's Federal Practice* § 132.01[4][a] (3d ed. 2010) (emphasis added). This case does not involve successive lawsuits; it involves a single suit that is ongoing. The doctrines of res judicata and collateral estoppel therefore do not apply, and *Banks* and *DiPinto* are inapposite. The fact that Mediran abandoned the breach of contract claim does not automatically bar him from pursuing a simultaneously asserted claim containing a breach of contract element[3]. IAM's arguments regarding res judicata and collateral estoppel must fail, and IAM has offered the Court no other reason to question the sufficiency of Mediran's pleadings with respect to the breach of contract element of his hybrid claim.

## II. Duty of Fair Representation

As the Ninth Circuit explained,

> [t]he duty of fair representation is a judicially established rule imposed on labor organizations because of their status as the exclusive bargaining representative for all of the employees in a

---

[3] The breach of contract claim was dismissed on preemption grounds. IAM has made no suggestion, much less an argument, that the hybrid claim should have been dismissed on these same grounds.

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

> given bargaining unit. The duty of fair representation exists because a single labor organization represents the interests of all employees within a unit, and if individual employees are not to be deprived of all effective means of protecting their own interests, it must be the duty of the representative organization to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct. The burden of proving a breach of the duty of fair representation is on the plaintiff.

*Beck v. UFCW, Local 99*, 506 F.3d 874, 878-79 (9th Cir. 2007) (quotations and citations omitted).

IAM argues that Mediran has failed to allege facts that could support a claim for arbitrary, discriminatory, or bad faith breach of the duty of fair representation. Mediran does not explain which kind of breach he alleges, but at the least his allegations adequately plead an arbitrary breach of the duty of fair representation. Because this finding is sufficient to defeat IAM's motion, the Court need not consider whether Mediran has stated a claim of bad faith or discrimination.

The test for arbitrariness is deferential to unions. This deference is lost "only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a wide range of reasonableness . . . as to be irrational." *Air Line Pilots Ass'n v. O'Neill*, 499 U.S. 65, 67 (1991) (quotation and citation omitted). This standard "gives the union room to make discretionary decisions and choices, even if those judgments are ultimately wrong." *Beck*, 506 F.3d at 879 (quotations omitted). The Ninth Circuit has analyzed arbitrariness "on a continuum." *Id.*

> On one end of the continuum is intentional conduct by a union exercising its judgment. As noted above, a union's conduct constitutes an exercise of judgment entitled to deference even when the union's judgments are ultimately wrong. Under Supreme Court precedents, so long as a union exercises its judgment, no matter how mistakenly, it will not be deemed wholly irrational. We may decline to give a union the deference owed to an exercise of judgment only where union actions or inactions are so far outside the range of reasonableness that [they are] wholly irrational or arbitrary.
> . . .
> On the other end of the continuum are actions or omissions that are unintentional, irrational or wholly inexplicable, such as an irrational failure to perform a ministerial or procedural act. We

7

United States District Court

For the Northern District of California

> have referred to such actions or omissions as "arbitrary" action. For example, courts have consistently refused to accept unions' claims that their actions involved any judgment or strategy where the union simply failed to perform some procedural act.

*Id.* at 879-80 (quotations and citations omitted) (alteration in original). For example, courts have found arbitrary conduct where (1) a union representative failed to research the collective bargaining agreement, *Peters v. Burlington N.R.R. Co.*, 931 F.2d 534, 541 (9th Cir. 1991); (2) a union failed to provide adequate notice of meetings, missed time limits, and provided late notification of a decision, *Moore v. Bechtel Power Corp.*, 840 F.2d 634, 637 (9th Cir. 1988); (3) a union representative failed to notify the employer that an employer was a steward, a status relevant to layoffs, *Galindo*, 793 F.2d at 1514; and (4) a union failed to file a grievance on time, *Dutrisac v. Caterpillar Tractor Co.*, 749 F.2d 1270, 1274 (9th Cir. 1983). "Mere negligence on the part of a union does not rise to the level of a breach of the duty of fair representation."  *Peters*, 931 F.2d at 538.

Duty of fair representation cases warn against the perfunctory handling of grievances and require unions to conduct some minimal investigation of grievances brought to their attention. *See Vaca v. Sipes*, 386 U.S. 171, 190-91 (1967) (no perfunctory processing of grievances); *Peters*, 931 F.2d at 540 ("[A] union's unexplained failure to consider a meritorious substantive argument in favor of an employee signals that the process has broken down and has much more in common with a ministerial failure than with a negligent decision."); *Tenorio v. NLRB*, 680 F.2d 598, 601 (9th Cir. 1982) (To comply with its duty of fair representation, "a union must conduct some minimal investigation of grievances brought to its attention."). However, "because a union balances many collective and individual interests in deciding whether and to what extent it will pursue a particular grievance, courts should 'accord substantial deference' to a union's decisions regarding such matters." *Peterson v. Kennedy*, 771 F.2d 1244, 1253 (9th Cir. 1985).

Finally, even if a union's conduct is arbitrary, this conduct "can breach the duty of fair representation only where the act substantially injures the union member." *Beck*, 506 F.3d at 880. This injury

1                           may arise in situations where the individual interest at stake is
2                           strong and the union's arbitrary action or omission completely
                          extinguishes the employee's [grievance] right[s], or where the
3                           union's arbitrary actions reflect reckless disregard for the rights
                          of an individual employee, or severely prejudice the injured
4                           employee under circumstances that do not further the policies
                          underlying the duty of fair representation.

5 *Id.* (quotations and citations omitted) (alteration in original).

6       IAM characterizes Mediran's allegations as complaints regarding delay and quibbles

7 with the outcome of the grievance process. It points out, correctly, that a union member's

8 disagreement with a union's judgment with regard to the processing of his grievance cannot

9 constitute a violation of the duty of fair representation unless bad faith or discrimination are

10 at play. *See Stevens v. Moore Business Forms, Inc.*,18 F.3d 1443, 1448 (9th Cir. 1994); *Ajifu*

11 *v. Int'l Ass'n of Machinists and Aerospace Workers District Lodge 141*, 175 L.R.R.M. 2569

12 (D. Haw. 2003). While Mediran does believe that his grievance should have resulted in a

13 mediation, he does not appear to challenge IAM's considered judgment as to whether these

14 procedures were warranted. Instead, his Complaint can be read to allege that IAM failed to

15 process his grievance at all, and that IAM's representations to the contrary were untrue.

16       IAM points to its communications with Mediran regarding the work it said it was

17 doing on his grievance. IAM argues that these communications demonstrate that IAM used

18 its judgment with regard to whether to pursue Mediran's grievance. Mediran characterizes

19 these communications as lies. While discovery may reveal that IAM's handling of Mediran's

20 grievance was more than perfunctory, Mediran's allegations that IAM falsified the grievance

21 processing, that it admitted that it had not processed Mediran's grievance, and that it had

22 failed to represent Mediran in the grievance process are sufficient to raise an inference that

23 IAM let Mediran's grievance languish and did not use its judgment with regard to whether to

24 proceed. Mediran's Complaint raises the question of whether his grievance was ever filed.

25 Procedural failures like these have been held to constitute arbitrary conduct. *See Moore*, 840

26 F.2d at 637; *Dutrisac*, 749 F.2d at 1274. That IAM's omissions allegedly coincided with

27 IAM's assurances that Mediran's grievance was being processed raises an inference that

28 more than negligence was at play.

**United States District Court**
For the Northern District of California

1    IAM makes no argument regarding the sufficiency of Mediran's pleadings with

2    respect to whether IAM's allegedly arbitrary conduct substantially injured Mediran.

3    Accordingly, Mediran's allegations are sufficient to survive a motion for judgment on the

4    pleadings.

5

6    **III. Causation**

7    IAM argues that Mediran has not adequately pleaded a causal connection between

8    IAM's alleged violation and Mediran's alleged damages. While some causation issues might

9    exist with respect to some of Mediran's allegations, his allegation that IAM handled

10   Mediran's grievance in a perfunctory manner can be traced to Mediran's alleged losses.

11

12   **CONCLUSION**

13   IAM's motion for judgment on the pleadings is DENIED. The case management

14   conference scheduled for July 18, 2011, is HEREBY VACATED. The case management

15   conference is continued until **August 29, 2011**, at 1:30 p.m. in Courtroom 12. The parties

16   shall file a joint statement no later than seven calendar days in advance of the case

17   management conference.

18

19   **IT IS SO ORDERED.**

20

21   Dated: 07/14/11                        _____

22                                          THELTON E. HENDERSON, JUDGE
                                            UNITED STATES DISTRICT COURT

23

24

25

26

27

28